**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **NIA RUDASILL ET AL.,** | |
| **Plaintiffs,**<br>-against- | **25-cv-1403 (ALC)** |
| **SWISS RE AMERICAN HOLDING CORPORATION ET AL** | **OPINION & ORDER** |
| **Defendants.** | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Nia Rudasill, Eileen Gillis, Michael Schlem, and Roberto Vuoto ("Plaintiffs") bring this action against Defendants Swiss Re American Holding Corporation ("Swiss Re"), Board of Directors of Swiss Re American Holding Corporation ("Board"), Philip K. Ryan, Larry Zimpleman ("Board Members"), Swiss Re American Holding Corporation Employee Pension Plan Committee ("Employee Pension Plan Committee"), and Does 1-10 (collectively "Swiss Re Defendants") for breach of their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., and related breaches of applicable law. Defendants now move for dismissal of Plaintiff's Complaint based on a failure to state a claim. ECF No. 66.

Plaintiffs are participants in an employee-sponsored retirement plan managed by the Swiss Re Defendants. Defendants are responsible for selecting and managing investment options for plan participants. Plaintiffs claim Defendants breached their fiduciary duties under ERISA by selecting and retaining poor investment fund options when other, more beneficial options were readily available, and by misusing the retirement plan's forfeiture funds. Defendants move to dismiss these claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

1

The Second Circuit has recognized a variance in pleading requirements for ERISA claims under 12(b)(6). ERISA Plaintiffs generally lack the inside information necessary to plead their claims in detail before discovery. Thus, if Plaintiffs plead sufficient circumstantial factual allegations, their claims may withstand a motion to dismiss. Here, Plaintiffs have met this standard. They have pleaded sufficient factual allegations regarding their share-class selection and retention claims and their forfeiture fund claims to generate plausible inferences of misconduct. Therefore, after careful review, Defendant's motion is **DENIED.**

## BACKGROUND

### I.    Factual Background

Defendant Swiss Re provides retirement benefits to its employees through the Swiss Re Group U.S. Employee's Savings Plan ("the Plan"). Complaint ("Compl."), ¶ 4. The Plan provides retirement income for approximately 4,288 participants, comprised of Swiss Re employees, former employees, and their beneficiaries. *Id*., at ¶109. Plaintiffs and the class members are participants in defined contribution plans with Swiss Re. *Id.*, at ¶56. They bring this suit for breach of the fiduciary duties under ERISA beginning six years prior to the date this action was filed and continuing to the date of judgment or such earlier date that the Court determines is appropriate and just ("Class Period"). *Id.,* ¶1.

Swiss Re is the Plan sponsor, and the Board is the Plan administrator. *Id.* ¶¶ 15–16. The Board has appointed the Employee Pension Plan Committee to manage and oversee the Plan's administration. *Id.* ¶¶ 16–18. Defendants Swiss Re, the Board Members, and Employee Pension Plan Committee are considered named fiduciaries, functional fiduciaries, or both under ERISA's definition. *Id.* ¶¶42-43.

In a defined contribution plan, participants contribute earnings (often matched by the employer up to a certain percentage) into an individual account and direct the contributions into one or more options on the plan's investment menu. Compl. ¶57. The menu is assembled by the plan's fiduciaries. *Id.* The Plan fiduciaries control the selection and retention of the Plan's investment options, having exclusive control over the menu of options to which participants may direct the assets in their accounts. *Id.* ¶110. Those selections each have their own fees, which are deducted from the returns participants receive on their investments. *Id.* These fiduciary decisions have the potential to dramatically affect the amount of money participants are able to save for retirement. *Id.* ¶61. Fiduciaries of defined contribution plans must engage in a rigorous process to control these costs and ensure that participants pay no more than a reasonable level of fees. *Id.*

The Plan Committee designates a default investment, known as the Qualified Default Investment Alternative ("QDIA"). *Id.* ¶116. A retirement plan can designate one of the investment offerings from its lineup as a QDIA to aid participants who lack the knowledge or confidence to make investment elections for their retirement assets. *Id.* If participants do not direct where their assets should be invested, all contributions are automatically invested in the QDIA. *Id.* The Plan's QDIA is the J.P. Morgan Smart Retirement Target Date Fund, share-class R5 ("JPM R5 TDF"), with a target date closest to the year a participant will reach retirement age. Plan fiduciaries are responsible for the prudent selection and monitoring of an appropriate QDIA. *Id.* ¶155.

### a. Investment Selection and Retention

While Plan participants can choose which asset classes in which to invest, they have no control over the cost or performance of the investments selected by the Swiss Re Defendants within each asset class. *Id.* ¶114. Participants of the Plan are captive investors whose choices are limited

by the investment decisions made by the fiduciaries. *Id.* The value of their individual accounts depends in large measure upon the decisions of the Swiss Re Defendants. *Id.*

Swiss Re's Plan would be categorized, at the very least, as "large," meaning its scale gave them access to the largest investment providers with the best performing investment offerings. *Id.* ¶157. A defined contribution plan pools the purchasing power of the combined assets of all plan participants—often thousands of individuals. *Id.* ¶58. Thus, large employer sponsored defined contribution plans can obtain much lower fees than an individual would be able to obtain in the retail market. *Id.* Those lower fees produce enhanced retirement savings. *Id.*

R shares are mutual funds specifically designed for employer-sponsored retirement plans and range from R1 to R6. *Id.* ¶ 95. Class R6 shares are a no-load class that offers shares with a fee structure that does not include 12b-1 fees. *Id.* A 12b-1 fee is a marketing and distribution fee for a mutual fund that is included in a fund's expense ratio. *Id.* Therefore, class R6 shares often carry a lower expense ratio than other R class shares. *Id.* The expense ratio directly impacts investment returns as these fees are automatically deducted from the fund's assets on an ongoing basis. *Id.* ¶97.

A target date fund ("TDF") is an investment vehicle that offers an all-in-one retirement solution through a portfolio of underlying funds that gradually become more conservative as the assumed target retirement year approaches. *Id.* ¶139. TDFs offer investors dynamic, easy asset allocation, while providing both long-term growth and capital preservation. *Id.*

Throughout the Class Period, the Plan's default investment option has been the JPM R5 TDF. *Id.* Given the scale and dynamic advantages of the Plan, including the amount of assets dedicated to the TDFs and the high average balance per participant, the Plan qualified for the share-class with the lowest expense ratio—JPM R6 TDF. *Id.* ¶140. Instead, Defendant Swiss Re chose

4

the R5 share-class, a share-class with a higher expense ratio, which reduced the compounding returns that participants enjoy. *Id.* In addition to maintaining a lower expense ratio, when comparing their annual return rates, JPM R6 TDFs have consistently outperformed the JPM R5 TDFs. *Id.* ¶141; *see* also Figures in Compl., at 33-34, 35-36, 59-62. As such, Defendant's Swiss Re's decision has cost the Plan Participants at least $1 million dollars in after-cost returns. *Id.*

In addition to the share-class selection, there were a variety of comparable investments available that consistently outperformed the non-TDF investments throughout the Class Period. *Id.* ¶152; *see* Figures in Compl., at 69-70. Morningstar is an industry standard investment research tool utilized by investment management organizations to evaluate and compare investment options. *Id.* ¶146. The tool groups investment options into specific "categories" based on investment attributes such as risk, return, and behavior profiles. *Id.* ¶147. Through Morningstar, fiduciaries use "search levers" to identify investments by their Morningstar Category. *Id.* The majority of comparator investments in the same Morningstar Category consistently outperformed the Plan's JPM R5 TDFs on an after-cost and risk basis throughout the Class Period, including, but not limited to, TRowe Price and Nuveen Lifecycle. *Id.*, ¶¶151, 157. The available non-JPM R5 TDF suites would have provided investors with the opportunity to achieve higher compounding returns. *Id.* ¶155. Over a 10-year period, JPM R5 TDFs only outperformed its Morningstar Category comparators 10 times out of 102 data points. JPM R5 TDFs, over a 10-year period, did not outperform their Nuveen Lifecycle counterpart once. *Id.* ¶158.

### b. Forfeiture Accounts

When employers make contributions to their employees' 401(k) accounts, like matching contributions or profit sharing, these contributions often come with a vesting schedule. *Id.* ¶162. If a plan participant leaves their job before becoming fully vested in the employer contributions,

they forfeit any portion of the employer contribution that has not yet vested. *Id.* The forfeited funds are then held in the plan's "forfeiture account." *Id.* Like all defined contribution plans, the Plan here maintains a forfeiture account in which employee's non-vested employer matching contributions are held when Plan participants leave their job. *Id.*

Under the Plan's Summary Plan Description ("SPD"), "any nonvested amounts … will be … forfeited to the Plan and used to reduce future employer contributions, restore forfeitures… or pay Plan expenses." *Id.* ¶164. A plan's forfeiture account is comprised of plan assets governed by the plan document. *Id.* ¶166. The Plan fiduciaries were obligated to utilize the Plan's forfeiture account pursuant to the Plan document, to either (1) pay reasonable Plan administrative expenses; (2) restore forfeitures; or (3) offset future employer contributions to the Plan. *Id.*, at ¶167.

According to the Plan's Form 5500s,[1] some of the forfeited funds have been used for employer contributions, but Swiss Re has also been amassing funds in its forfeiture account throughout the Class Period. *Id.*, ¶168; *see* also Figure in Compl., at 75. The Internal Revenue Service has proposed a rule that states administrators must use forfeitures no later than 12 months after the close of the plan year in which the forfeitures are incurred. Use of Forfeitures in Qualified Retirement Plans, REG-122286-18, 2023-11 I.R.B. 565.

## II.    Procedural History

Plaintiffs filed their Complaint on February 19, 2025, against the current Defendants as well as Great-West Lifeco Inc., Great-West Lifeco U.S. LLC, Empower Annuity Insurance Company of America ("EAICA"), Empower Plan Services, LLC ("Empower") and Empower Trust Company, LLC (collectively, "Empower Defendants"). ECF No. 1. On May 9, 2025, Plaintiffs voluntarily dismissed their Complaint against Great-West LifeCo Inc., Great-West

---

[1] This form provides aggregate information on a plan's qualification, financial condition, and operation. Compl., at 41.

LifeCo U.S. LLC, Empower Annuity Insurance Company of America, and Empower Trust Company, LLC. ECF No. 55.

On May 19, 2025, Defendants filed letters requesting pre-motion conferences ahead of filing their anticipated Motions to Dismiss. ECF Nos. 57, 58. On June 6, 2025, the Court denied Defendants' requests and set a briefing schedule. On August 1, 2025, the remaining Defendants filed their Motions to Dismiss. ECF Nos. 65, 67. On August 22, 2025, Plaintiffs filed their Opposition. ECF No. 69. On September 12, 2025, Defendants filed their Replies. ECF Nos. 71, 72. On October 17, 2025, Plaintiffs voluntarily dismissed their Complaint against Defendant Empower Retirement, LLC. ECF No. 73. On December 5, 2025, Plaintiffs voluntarily dismissed Counts I (Excessive Recordkeeping Fees) and IV (Failure to Monitor the Recordkeeper), against Swiss Re Defendants. ECF No. 76. On February 3, 2026, the current Defendants filed a letter with supplemental authorities. ECF No. 78. On February 17, 2026, Plaintiffs filed a letter with supplemental authorities. ECF No. 79.

## STANDARD OF REVIEW

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citations omitted).  Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

7

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

A complaint will survive a motion to dismiss if it contains sufficient factual allegations that state a claim of relief that is plausible on its face. *Sacerdote v. New York University*, 9 F.4th 95, 106 (2d Cir. 2021) (citing *Ashcroft*, 556 U.S. at 678 (2009)). Courts must construe the allegations liberally, "accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.*, at 106-107 (citations omitted). In addition, a complaint should be read as a whole, "not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

The Second Circuit warned that evaluating ERISA claims under the *Twombly* and *Iqbal* pleading standard requires particular care. *See* generally *Sacerdote*, 9 F.4th 95. For ERISA breach of fiduciary duty claims, the focus is on the fiduciary's process rather than the outcome of the investment decisions. The duty of prudence requires fiduciaries to act with the care, skill, prudence, and diligence that a prudent person would use under similar circumstances. 29 U.S.C. § 1104. Courts have cautioned to ensure ERISA claims do not rely on hindsight or speculative comparisons to better-performing alternatives. Plaintiffs bringing ERISA breach of fiduciary duty claims must allege facts focusing on a flawed process rather than unfavorable results. *Ferguson*, 2019 U.S. Dist. LEXIS 160112, *10. Thus, the complaint must allege nonconclusory facts that raise a plausible inference of misconduct and does not rely on "the vantage point of hindsight." *Pension Benefit Guar. Corp.*, 712 F.3d at 718 (quoting *In re Citigroup ERISA Litig.*, 662 F.3d 128, 140 (2d Cir. 2011)).

8

"ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Sacerdote*, 9 F.4th at 107. Thus, a claim "may withstand a motion to dismiss based on sufficient circumstantial factual allegations to support the claim, even if it lacks direct allegations of misconduct." *Id.* Although details about a fiduciary's methods and actual knowledge tend to be "in the sole possession of [that fiduciary]," ERISA imposes extensive disclosure requirements on plan administrators, thus giving plan beneficiaries and participants the opportunity to find out how the fiduciary invested the plan's assets. *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (internal quotation marks omitted).

Even when a plaintiff does not directly address the process by which an ERISA plan was managed, a breach of fiduciary duty claim may survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer the process was flawed, thus "permit[ting] the court to infer more than the mere possibility of misconduct." *Sacerdote*, 9 F.4th at 108; *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 U.S. Dist. LEXIS 160112, at *8 (S.D.N.Y. Sept. 18, 2019) (citing *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt*, 712 F.3d at 718 (2d Cir. 2013)); *Iqbal*, 556 U.S. at 679. Breach of fiduciary duty claims will survive if the complaint alleges facts showing an adequate investigation would have revealed to a reasonable fiduciary that the decision at issue was imprudent. *Id.* The standard generally requires the plaintiff to allege facts that, if accepted as true, would show that a prudent fiduciary in like circumstances would have acted differently. *Pension Benefit Guar. Corp.*, 712 F.3d at 727.

## DISCUSSION

Plaintiffs argue that Defendants breached the fiduciary duties under ERISA by making imprudent investment decisions and failing to use plan forfeiture funds. They argue that the

9

documents related to this matter that would be disclosed in discovery, namely the plan service provider agreement, would provide the pertinent information to determine investment theories and forfeiture usage. Compl., ¶102.

### A. Plaintiffs Sufficiently Plead Imprudent Investments Claim (Count II)

Plaintiffs have sufficiently alleged facts that demonstrate Defendants have breached their fiduciary duties by making imprudent investment decisions. Under ERISA, a fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). The prudence of a fiduciary is measured according to the objective prudent person standard. *Sacerdote*, 9 F.4th at 107. ERISA instructs the Court to assess a fiduciary's prudence "under the circumstances then prevailing," so "judg[ing] a fiduciary's actions based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight." *Id.* The standard "focuses on a fiduciary's conduct in arriving at an investment decision, not on its results, and asks whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Id.* (internal citations and quotations omitted).

On review of a motion to dismiss, the Court must draw reasonable inferences from the complaint in the plaintiffs' favor, which does not require an ERISA plaintiff "to rule out every possible lawful explanation for the conduct they challenge." *Sacerdote*, 9 F.4th at 108. Plaintiffs must allege facts that, if proved, would show that an "adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident." *In re Citigroup ERISA Litig.*, 662 F.3d 128, 141 (2d Cir. 2011) (quoting *Kuper v. Iovenko*, 66 F.3d 1447, 1460 (6th Cir. 1995)).

10

### 1. Share-class Claim

The difference in performance between the share-classes Plaintiffs argue Defendants should have selected compared to the one they did select is enough to demonstrate a claim for imprudent share-class selection. The existence of less expensive and equal and/or better performing share-classes for a particular fund *may* support an inference that a fiduciary acted in violation of ERISA by imprudently selecting and/or failing to properly monitor and remove the more expensive class. *Collins v. Northeast Grocery, Inc.*, 149 F.4th 163, 172 (2d Cir. 2025); *see also Sacerdote*, 9 F.4th at 108-10. In *Sacerdote*, the Second Circuit found that Plaintiffs sufficiently alleged the defendants acted imprudently when a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative. 9 F.4th at 108-10 (quoting *Pension Benefit Guar. Corp.*, 712 F.3d at 716).

Plaintiffs argue that the JPM R6 TDF share-class was a readily available alternative with a lower expense ratio. Compl. ¶138. The Second Circuit in *Sacerdote* reviewed the District Court's dismissal of improper selection of share-class claims and found that there was no basis to dismiss pleadings that generate plausible inferences at the early stage of motion to dismiss. 9 F.4th at 108 (2d Cir. 2021). While prudent fiduciaries may choose to offer one set of shares over another, the pleading standard does not require ERISA plaintiffs to rule out every possible lawful explanation for the conduct they challenge. *Id.* Plaintiffs point to a variance in performance between the JPM R5 and R6 TDFs from 2018 to 2023 to state how the share-class selection process was flawed and/or relied on improper methodology. They also state that the JPM R6 TDF, an option with a lower expense ratio, was a readily available option the Plan qualified for that would have resulted in participants receiving a higher compounding return. Compl., ¶¶140-

11

42. Accordingly, Plaintiffs sufficiently allege a possibility that Defendants breached their duty of prudence with respect to share-class selection.

### 2. Alternative Investment Options Claim

Plaintiff's factual allegations of the difference in performance between the JPM R5 TDF's and comparable non-JPM R5 TDFs is enough to demonstrate a possible breach of prudence. In some cases, it would be reasonable to infer from a decline in the price of a security, combined with other alleged facts, that the security no longer was a sound investment. In *Sacerdote*, the Second Circuit accepted Plaintiff's allegations regarding the cost differentials in share-class selection because they alleged that fiduciaries could have readily obtained that data at the time from the prospectus on each fund. 9 F.4th at 105 (2d Cir. 2021). Therefore, the plaintiffs sufficiently alleged that a superior alternative investment was readily apparent such that reviewing the prospectuses of the funds would have revealed that alternative. *Id.*, at 108.

Plaintiffs claim that Defendants failed to apply requisite and known industry-standard fiduciary tools utilized to evaluate investments, thereby, not acting in the sole interest of Plan participants. Compl. ¶148. Morningstar is the readily available industry standard available tool used by investment management organizations to evaluate and compare investment options. *Id.* ¶146. Plaintiffs argue if Defendants had utilized a prudent methodology in making their investment decisions, a variety of other investments in the same Morningstar Category would have been included in the Plan instead, as other investments outperform the investments chosen by Defendants. *Id.* ¶148. Further, Plaintiffs state that based on the outcomes of the Defendants' methodologies, it is apparent Defendants failed to consider the superior alternative investments that were available to them in any given year while "looking back" at previous years during the Class Period and in many cases "before." *Id.* ¶150. Plaintiffs state there were many alternative

investment options that clearly outperformed the JPM R5 TDFs on an after-cost and risk basis throughout the Class Period, including, but not limited to, TRowe Price and Nuveen Lifecycle. *Id.* ¶157. On a relative basis, these investments would have been obvious comparators, since they all fall within the same Morningstar Category. *Id.*

While a process-focused rather than outcome-focused approach is required under ERISA pleading standards, a claim may survive a motion to dismiss if it can be reasonably inferred from the circumstantial factual allegations that the process was flawed. *Sacerdote*, 9 F.4th at 108. The duty of prudence does not compel ERISA fiduciaries to automatically abandon investment options in favor of the prior year's top performers, because, if that were the case, "Plan sponsors would be duty-bound to merely follow the industry rankings for the past year's results, even though past performance is no guarantee of future success." *Patterson*, 2019 U.S. Dist. LEXIS 174832, at *33-34. Although there are a myriad of reasons why an investment organization may pick a set of investments over another, it is inappropriate at this early stage to require Plaintiff to rule out every possible lawful explanation for the conduct to infer that decision-making was imprudent. Plaintiffs provide data of security performance over a ten-year period where the year-end annualized returns for the JPM R5 TDF's compared to the other funds are within 1% point of each other. Figures in Compl., at 65-68. While less than one percentage difference in returns was rejected in *Patterson* as certainly insubstantial (compared to a nine-point differential in *Jacobs*), this analysis cuts to the merits of the case, which is not considered at the motion to dismiss stage. *Patterson v. Stanley*, 2019 U.S. Dist. LEXIS 174832, at *32 (S.D.N.Y. Oct. 7, 2019); *Jacobs v. Verizon Commc'ns, Inc.*, 2017 U.S. Dist. LEXIS 162703, at *9 (S.D.N.Y. Sept. 28, 2017).

Plaintiffs provide sufficient factual allegations that Defendants should have looked at the Morningstar comparators that outperformed the JPM R5 TDFs consistently over the class period. Figures in Compl., at 69-70. For example, Plaintiffs point to the fact that the JPM R5 TDF did not outperform its Nuveen Lifecyle counterpart once over the ten-year period. Compl. ¶158. Drawing all reasonable inferences in their favor, Plaintiffs have plausibly alleged that in selecting and maintaining the JPM R5 TDFs Defendants may have breached their fiduciary duties.

### B. Plaintiffs Sufficiently Allege Misuse of Forfeiture Funds Claim (Count III)

Defendants have been consistently amassing funds in their forfeiture account throughout the Class Period. Figure in Compl., at 75. In their Complaint, Plaintiffs argue Defendants breached their fiduciary duties, relying on IRS Proposed REG-122286-18, which states: "[t]he funds located in a plan's forfeiture account are to be used and not accumulated and the transitional rule explicitly requires plan administrators to use forfeitures no later than 12 months after the close of the plan year in which the forfeitures are incurred." Compl. ¶168. Defendants argue that the claim must be denied because this is simply a proposed regulation that has not yet been adopted. But even in the absence of binding regulation stating that Defendants must use forfeiture funds by a certain date, they may still be liable for breaching their fiduciary duties. Fiduciaries can still be held accountable for failure to consider their trustees' best interests. The amassing of funds detailed in the Complaint may still have violated their duty under ERISA to act in the soley in the interests of the participants. Figure in Compl., at 75. Discovery may provide more insight to how the Swiss Re fiduciaries are using the funds. Accordingly, Plaintiffs have sufficiently alleged Swiss Re Defendants may be in breach of their fiduciary duties to use forfeiture funds prudently.

14

## CONCLUSION

For the foregoing reasons, Defendant's motion is **DENIED** without prejudice.

The Clerk of Court is respectfully directed to terminate ECF Nos. 64 and 66.

**SO ORDERED.**

**Dated: March 30, 2026**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**